Filed 1/14/14  Kaabinejadian v. Rabobank CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MASSOUD KAABINEJADIAN, | |
| Plaintiff and Appellant, | E056481 |
| v. | (Super.Ct.No. CIVRS1110343) |
| RABOBANK, N.A. et al., | **OPINION** |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Joseph R. Brisco,

Judge.  Affirmed in part, reversed in part, and remanded with directions.

Massoud Kaabinejadian, in pro. per.; and Jeanne M. Collachia for Plaintiff and

Appellant. [*Retained.*]

Orrick, Herrington & Sutcliffe, Patricia K. Gillette, Kristen M. Jacoby, Lena P.

Ryan, and Craig Wickersham for Defendants and Respondents.

Plaintiff Massoud Kaabinejadian worked for defendant Rabobank, N.A.

(Rabobank) until he was terminated by his supervisor, defendant Cheryl Walker.  He

filed a workers' compensation proceeding against Rabobank, seeking compensation for

emotional distress, but it was ultimately unsuccessful.

1

In this action, Kaabinejadian asserts causes of action for national origin discrimination, wrongful termination in violation of public policy, breach of contract, and intentional infliction of emotional distress. The trial court sustained a demurrer to the first three causes of action, based on the statute of limitations; it rejected Kaabinejadian's argument that the statute was equitably tolled during the workers' compensation proceeding. The trial court also sustained a demurrer to the fourth cause of action, apparently ruling that the workers' compensation proceeding was res judicata as to his emotional distress claim.

Kaabinejadian appeals. With respect to the first three causes of action, we will reverse; we will hold that Kaabinejadian adequately alleged equitable tolling. With respect to the fourth cause of action, however, we will affirm — not based on res judicata (or collateral estoppel), but rather because Kaabinejadian failed to allege any sufficiently extreme or outrageous conduct by defendants.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.      *The Allegations of the Operative Complaint*.

Kaabinejadian filed this action on December 1, 2011.

The operative complaint was filed on March 1, 2012.  It asserted four causes of action:

1.  Employment discrimination based on national origin, against Rabobank;

2.  Wrongful termination in violation of public policy, against Rabobank;

3.  Breach of contract, against Rabobank;

4.  Intentional infliction of emotional distress, against both Rabobank and Walker.

These causes of action were based on the following allegations.

In December 2005, Rabobank hired Kaabinejadian as a Senior Vice-President – Credit Administrator.

In April 2006, several Rabobank employees started making false accusations about Kaabinejadian to Walker and others; these employees were motivated by national origin discrimination, and they were hoping to get him fired.

In May 2006, Kaabinejadian learned about these false accusations.  He told Walker that they were untrue, that they were causing him "significant worry, anxiety and emotional upset," and that they were creating a "hostile work environment."  Walker promised to investigate and to stop these "acts of harassment."

In June 2006, however, Walker told Kaabinejadian she was not going to investigate or take any action. Kaabinejadian was "shocked and greatly upset and disturbed . . . ." He told Walker that he was going to file claims for discrimination and emotional distress. Walker replied, "in a threatening and menacing voice and demeanor," that he should "'hold up the mirror and look at [him]self,'" which he reasonably understood to be an expression of prejudice based on his national origin.

In July 2006, Walker had Kaabinejadian make a six-hour, 350-mile trip from Ontario to El Centro, telling him falsely that he had to interview applicants for employment there. Once he got there, Walker admitted that she had lied and fired him. The termination was in retaliation for his announced intent to file discrimination and emotional distress claims. The termination made Kaabinejadian "severely emotionally upset and distressed . . . ."

In September 2006, Kaabinejadian filed an emotional distress claim with the Workers' Compensation Appeals Board (Board). He later added a claim for discrimination based on intent to file a workers' compensation claim. (See Lab. Code, § 132a.)

In March 2007, Kaabinejadian filed a national origin discrimination claim against Rabobank with the California Department of Fair Employment and Housing (Department). In May 2008, the Department issued him a right-to-sue letter.

4

In August 2011, an administrative law judge (ALJ) denied Kaabinejadian's workers' compensation claim. She found that it was barred by Labor Code section 3208.3, subdivision (d). This subdivision provides (as relevant here): "[N]o compensation shall be paid . . . for a psychiatric injury related to a claim against an employer unless the employee has been employed by that employer for at least six months. . . . This subdivision shall not apply if the psychiatric injury is caused by a sudden and extraordinary employment condition." Kaabinejadian conceded that he worked for Rabobank for less than six months, and the ALJ found that the claimed injury was not caused by a sudden and extraordinary employment condition: "[E]ach event described by Mr. Kaabinejadian as having contributed to his claim of injury . . . fit well within the parameters of normal, regular or routine exchanges between employees and the employer . . . ."

Finally, the ALJ found that Kaabinejadian "ha[d] not sustained his burden of proof" on his claim of discrimination based on intent to file a workers' compensation claim because he did not report any claim of injury until after he had already been terminated.

The denial of Kaabinejadian's workers' compensation claim became final in December 2011.

B.     *The Demurrer.*

In April 2012, defendants filed a demurrer to the operative complaint.[1]
Kaabinejadian filed an opposition.

Later in April 2012, the trial court heard argument on the demurrer.  It sustained
the demurrer on all causes of action without leave to amend.  With regard to the first,
second, and third causes of action, it explained that the equitable tolling doctrine did not
apply because the Board did not have jurisdiction of Kaabinejadian's claims.  With
regard to the fourth cause of action, it explained that the claim had been "litigated to its
finality" before the Board.  Accordingly, it entered judgment against Kaabinejadian and
in favor of Rabobank.

---

[1]     The demurrer itself, Kaabinejadian's opposition, and defendants' reply, if
any, have not been included in the appellate record.

Initially, we considered dismissing Kaabinejadian's appeal on the ground that he
had failed to supply an adequate record.  (See *Webman v. Little Co. of Mary Hospital*
(1995) 39 Cal.App.4th 592, 595.)  However, we are required to "presume that the record
in an appeal includes all matters material to deciding the issues raised."  (Cal. Rules of
Court, rule 8.163.)  Defendants have not asked to augment the record and have not argued
that the omitted materials are "necessary for proper consideration of the issues . . . ."
(See Cal. Rules of Court, rule 8.124(b)(1)(B).)  We can consider grounds for a general
demurrer even if they were not raised below.  (*Buford v. State of California* (1980) 104
Cal.App.3d 811, 826.)  Accordingly, the presumption that the record is adequate stands
unrebutted.

6

## II

## STANDARD OF REVIEW

A demurrer should be sustained when "[t]he pleading does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).)

"We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citations.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. [Citations.] We liberally construe the pleading with a view to substantial justice between the parties. [Citations.]" (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558.)

## III

## FIRST, SECOND, AND THIRD CAUSES OF ACTION:  EQUITABLE TOLLING

With respect to the first three causes of action, Kaabinejadian contends that he adequately pleaded equitable tolling of the statute of limitations.

The limitations periods for these causes of action were:

1. Employment discrimination:  One year after issuance of a right-to-sue notice. (Gov. Code, § 12965, subd. (b).)

2. Wrongful termination:  Two years.  (Code Civ. Proc., § 335.1; see *Lamke v. Sunstate Equipment Co.* (N.D. Cal. 2004) 387 F.Supp.2d 1044, 1051-1052.)

3. Breach of written contract:  Four years.  (Code Civ. Proc., § 337, subd. 1.)

The first cause of action accrued when the Department issued a right-to-sue notice, in May 2008.  Thus, absent equitable tolling, the one-year period had run when this action was filed in December 2011.

The second and third causes of action accrued when Kaabinejadian was terminated, in July 2006.  Thus, again, absent equitable tolling, the two-year and four-year limitations periods had both run by the time this action was filed in December 2011.

"The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine.  [Citations.]  It is 'designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations — timely notice to the defendant of the plaintiff's claims — has been satisfied.'  [Citation.]  Where applicable, the doctrine will 'suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'  [Citation.]" (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99.)

"Broadly speaking, the doctrine applies '"[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one."'  [Citation.]  Thus, it may apply where one action stands to lessen the harm that is the subject of a potential second action; where administrative remedies must be exhausted before a second action can proceed; or *where a first action, embarked upon in good faith, is found to be defective for some reason*.  [Citation.]" (*McDonald v. Antelope Valley Community College Dist.*, *supra*, 45 Cal.4th at p. 100, italics added.)

8

"[E]quitable tolling . . . require[s] a showing of three elements: 'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.' [Citations.]" (*McDonald v. Antelope Valley Community College Dist.*, *supra*, 45 Cal.4th at p. 102, fn. omitted.)

"'"'The timely notice requirement essentially means that the first claim must have been filed within the statutory period. Furthermore[,] the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim. Generally this means that the defendant in the first claim is the same one being sued in the second." [Citation.] "The second prerequisite essentially translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." [Citation.] "The third prerequisite of good faith and reasonable conduct on the part of the plaintiff is less clearly defined in the cases. But in *Addison v. State of California* [(1978)] 21 Cal.3d 313, . . . the Supreme Court did stress that the plaintiff filed his second claim a short time after tolling ended." [Citation.]' [Citation.]" (*McDonald v. Antelope Valley Community College Dist.*, *supra*, 45 Cal.4th at p. 102, fn. 2.)

"[T]he effect of equitable tolling is that the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded. As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time

9

during which the tolling event previously occurred." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370-371, fn. omitted, italics omitted.)

*Elkins v. Derby* (1974) 12 Cal.3d 410 is closely analogous to this case. There, the plaintiff was injured at the defendant's business. The plaintiff claimed, in good faith, that he was the defendant's employee. Hence, he filed a workers' compensation claim. The Board, however, found that he was not an employee and denied his claim. The plaintiff then filed a personal injury action after the applicable limitations period had run. (*Id*. at p. 413.)

The Supreme Court held that equitable tolling applied. (*Elkins v. Derby*, *supra*, 12 Cal.3d at pp. 414-420.) It acknowledged "that plaintiff Elkins was not required to seek workmen's compensation as a prerequisite to his filing a civil action but rather could immediately have initiated a tort action or have pursued his compensation and tort remedies simultaneously. [Citations.]" (*Id*. at p. 414.) It explained, however, that "duplicative proceedings are surely inefficient, awkward and laborious. If, in order to avert loss of his rights, an injured party is forced to initiate proceedings with both the compensation board and a superior court, he brings onerous procedural burdens upon himself, his employer, and the already overtaxed judicial system. Such additional resource investments go for nought whenever the compensation board concludes that the injured party is entitled to relief." (*Id*. at p. 420.)

10

The court also stated: "Nor can we overlook the inequity that a duplicative filing requirement might work upon an injured party. The workmen's compensation system, after all, was intended to afford a simple and nontechnical path to relief. [Citations.] The system affords means by which an employee may learn about his rights informally and without an attorney. [Citation.] Unaware, under such circumstances, that he may be entitled to a remedy only in superior court or overwhelmed by seemingly inscrutable distinctions between 'employees' and 'independent contractors' or injuries arising within and without 'the course of employment,' an injured party can easily lose his tort remedy while devoting his attention to pursuing a compensation claim. [Citation.] The tolling of the statute during the pendency of the compensation claim does much to eliminate this trap . . . ." (*Id.* at p. 419, fn. omitted.)

More generally, it has been said that "the question of tolling is not to be determined retrospectively depending upon the success or failure of the plaintiff in pursuing the alternative remedy. [Citation.] . . . The injured person should not be required 'to predict at his peril the precise legal theory (remedy) supporting ultimate recovery. He should not be placed in the dilemma of awaiting "jurisdictional" decisions . . . (of one tribunal) . . . while the clock of limitations ticks in his ear.' [Citation.]" (*Myers v. County of Orange* (1970) 6 Cal.App.3d 626, 636.)

Here, the trial court ruled that equitable tolling did not apply because the Board did not have jurisdiction of Kaabinejadian's civil claims. In this appeal, defendants seem to be raising the same argument; for some reason, they do not phrase it in terms of

11

"jurisdiction," but they do argue that "the legal doctrine of equitable tolling only applies if a plaintiff chooses from two available remedies. In this case, there was only <u>one</u> forum for each claim asserted in the [operative complaint] so [Kaabinejadian] could not possibly choose one remedy over another." In *Elkins* itself, however, the Board did not have jurisdiction of the plaintiff's claims — other than "jurisdiction to determine jurisdiction" (*Scott v. Industrial Acc. Com.* (1956) 46 Cal.2d 76, 83) — because it found that he was not the defendant's employee. Nevertheless, equitable tolling applied.

Defendants, however, also raise a somewhat different argument. They assert that, under *Elkins*, for equitable tolling to apply, Kaabinejadian's civil claims must be the mirror image of his workers' compensation claim, with the sole difference being whether a court or the Board has jurisdiction. Because his civil claims arise out of "different wrongs" than his workers' compensation claim, defendants assert, he is not entitled to equitable tolling.[2]  (Underlining omitted.)

The argument that the first claim must be identical to the second claim — or, at least, identical aside from the jurisdictional facts — was rejected in *Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917. The *Collier* court said: "[T]he two 'causes of action' need not be absolutely identical. The critical question is whether notice of the first claim affords the defendant an opportunity to identify the sources of evidence which

---

[2]    Defendants do not challenge the applicability of equitable tolling to the fourth cause of action, for intentional infliction of emotional distress, because damages for emotional distress are recoverable in a workers' compensation proceeding.

might be needed to defend against the second claim. [The defendant]'s counsel at oral argument urged the two claims also must represent mutually inconsistent remedies for the same harm as did the workers' compensation and tort actions in *Elkins*. . . . ' . . . No such limitation appears in the language of the precedent cases. . . .' . . . So long as the two claims are based on essentially the same set of facts timely investigation of the first claim should put the defendant in position to appropriately defend the second. . . . In terms of the underlying policies of the statutes of limitation, it is irrelevant whether those two claims are alternative or parallel, consistent or inconsistent, compatible or incompatible." (*Collier*, *supra*, at pp. 925-926, fns. omitted.)

In support of their "different wrongs" argument, defendants cite *Aerojet General Corp. v. Superior Court* (1986) 177 Cal.App.3d 950. There, an injured worker alleged that his employer had fraudulently concealed the hazards of a chemical that he was exposed to in the workplace. (*Id*. at p. 952.) He had previously filed a successful workers' compensation claim for his injuries. (*Id*. at p. 953 & fn. 1.) After a full trial on the statute of limitations issue, the trial court ruled that equitable tolling applied. (*Id*. at pp. 952-953.)

The appellate court reversed, holding that the workers' compensation claim did not equitably toll the fraudulent concealment claim. It explained: "[P]laintiff['s] worker's compensation claim and [his] suit for fraudulent concealment are not alternative remedies for the same harm; they are different remedies for different harms. The filing of the former did not alert defendants to the nature or the imminence of the latter. That this

13

is so cannot be gainsaid when it is recognized that evidence an employer might gather during the pendency of a worker's compensation action to refute a civil claim for the same injury will serve him not at all in a suit for fraudulent concealment, where liability for the injury itself is not at issue." (*Aerojet General Corp. v. Superior Court*, *supra*, 177 Cal.App.3d at p. 956, fn. omitted.)

As the discussion in *Aerojet* reveals, that case did not impose a requirement of "similar harms" or "similar remedies" separate and apart from the preexisting three-part requirement of timely notice, lack of prejudice, and reasonable and good faith conduct. Quite the contrary, it discussed the similarities and differences between the two successive claims in the context of the second requirement, lack of prejudice, which turns on whether the filing of the first claim put the defendant on notice of the need to defend against the second claim. Because — on the particular facts of *Aerojet* — the two claims involved different wrongs, the first claim failed to afford the requisite notice of the second claim.

*Cervantes v. City of San Diego* (9th Cir. 1993) 5 F.3d 1273 adopted precisely this reading of California law. There, the plaintiff had been terminated from his job with a city. He filed an administrative proceeding for reinstatement. When that was unsuccessful, he filed an action in federal court under 42 United States Code section 1983, alleging that the city had conspired with others to frame him for certain crimes, which resulted in his termination. (*Id*. at p. 1274.) The trial court ruled that equitable

14

tolling did not apply, as a matter of law, because the plaintiff's administrative proceeding was not "substantially similar" to his civil action. (*Id.* at p. 1275.)

The appellate court rejected this "substantial similarity' test: "'[S]imilarity' of the prior and current claims is a matter best determined following, and on the basis of, the application of the three-part equitable tolling test established by California law. Although we have previously stated that 'equitable tolling is not applicable when a plaintiff has pursued a remedy as to only one of several distinct wrongs,' [citation], we have never suggested that in reaching that determination the district court may bypass the traditional method for determining California equitable tolling issues. It is the application of California's equitable tolling test itself that yields the 'final' conclusion as to whether two claims are 'similar' enough that the pendency of the one should toll the limitations period for the other. Although 'similarity' often serves as a shorthand designation of the outcome of the test, it is neither separable from nor a 'threshold' to the requisite three-part inquiry. Application of the three-part test is mandatory.

" . . . '[S]imilarity' of the prior and subsequent claims is a significant consideration when applying the second test factor, prejudice to the defendant. However, unlike a 'threshold' inquiry determinable as a matter of law, the focus of this factor is whether the facts of the two claims are 'at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second.' [Citation.] 'The critical question is whether notice of the first claim affords the defendant an opportunity to identify the sources of evidence which might be needed to defend

against the second claim.' [Citation.] This inquiry — the appropriate 'similarity' inquiry under California law — is far more fact-specific and evidence-bound than the 'threshold' determination apparently envisioned by the district court. Under California's equitable tolling test, 'similarity' is less a legal conclusion and more a factual exploration of the contentions and evidence relevant to each claim. As such, 'similarity' is not easily resolved as a matter of law, without receiving evidence." (*Cervantes v. City of San Diego*, *supra*, 5 F.3d at pp. 1275-1276, fns. omitted.)

Here, for purposes of the prejudice prong of the three-part test, Kaabinejadian alleged: "Defendant Rabobank[,] through its Workers' Compensation Proceedings legal counsel of record, . . . conducted a full and thorough investigation of Plaintiff and the underlying facts surrounding his employment with Defendant Rabobank beginning in 2006 and extending into 2010, including procurement of Plaintiff's employment, medical and psychological records, various workplace documents and . . . workplace witness and co-worker statements with the intent to defend Defendant Rabobank against not only the Workers' Compensation Proceeding but also the civil action likely to be asserted by Plaintiff arising out of the employment relationship." This was a sufficient allegation of lack of prejudice to Rabobank.

Moreover, we cannot say, as a matter of law, that Kaabinejadian's claims in the workers' compensation proceeding were so different from his claims in this proceeding that Rabobank must have been prejudiced. The workers' compensation proceeding was

16

"based on essentially the same set of facts" as the present action. (See *Collier v. City of Pasadena*, *supra*, 142 Cal.App.3d at p. 925.)

In the workers' compensation proceeding, Kaabinejadian claimed that he had suffered work-related emotional distress between April 2006 and his termination in July 2006. He alleged that he had complained "about the hostile work environment and being subjected to ongoing discrimination." He also alleged that his termination was "retaliat[ory]" and that he was terminated "in the most inhumane, degrading, cruel and hurtful way possible."

These allegations reasonably would have caused Rabobank to investigate Kaabinejadian's work-related circumstances between April and July 2006. In particular, it would have investigated his complaints to Walker, which in turn would have revealed other employees' complaints about him. Rabobank would also have investigated the circumstances of his termination. All of this would have prepared Rabobank to defend against Kaabinejadian's allegations in this action, which arise out of the same facts, even though he is asserting different legal theories.[3] If, as a factual matter, Rabobank did *not*

---

[3]     Defendants point out that the ALJ's opinion in the workers' compensation proceeding "does not mention national origin discrimination, wrongful termination, or breach of contract. Not once."

In his pleadings, however, Kaabinejadian did assert that he had been "wrongfully terminated." The ALJ bifurcated the proceeding; she limited the first phase to various threshold issues, which ultimately proved dispositive. Thus, she did not necessarily reach or even mention all of Kaabinejadian's claims.

More to the point, defendants are arguing a purely factual issue that we cannot resolve in the context of a demurrer.

17

have an opportunity to investigate these matters, it can present evidence of that later.  At the present pleading stage, however, Kaabinejadian has adequately alleged the lack of prejudice prong of equitable tolling as to Rabobank.

Defendants do not dispute the other two prongs of the three-part test.  In other words, they do not claim that Kaabinejadian failed to allege that he filed the workers' compensation proceeding in a timely manner or that he acted reasonably and in good faith.  We therefore conclude that Kaabinejadian has adequately alleged equitable tolling as to the first three causes of action.

IV

FOURTH CAUSE OF ACTION:  FAILURE TO STATE A CAUSE OF ACTION

The trial court ruled that the judgment on Kaabinejadian's workers' compensation claim barred his fourth cause of action, for intentional infliction of emotional distress, apparently as a matter of res judicata (but possibly as a matter of collateral estoppel).

Kaabinejadian contends that this ruling was erroneous.  Defendants respond that both proceedings involved the issue of workers' compensation exclusivity, and that the ALJ's determination on this issue is dispositive.

Separately and alternatively, however, defendants also argue that the trial court could have sustained the demurrer to the fourth cause of action on other grounds, including failure to allege sufficiently extreme and outrageous conduct.  """A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that

18

ground." [Citation.]' [Citation.]" (*Yee v. Cheung* (2013) 220 Cal.App.4th 184, 192.) Hence, we begin with the issue of the sufficiency of the allegations regarding defendants' conduct. And we will end with this issue, as well, because we find it dispositive.

"'The elements of a cause of action for intentional infliction of emotional distress are (1) the defendant engages in extreme and outrageous conduct with the intent to cause, or with reckless disregard for the probability of causing, emotional distress; (2) the plaintiff suffers extreme or severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the plaintiff's extreme or severe emotional distress. [Citation.] "[O]utrageous conduct" is conduct that is intentional or reckless and so extreme as to exceed all bounds of decency in a civilized community. [Citation.] . . . [Citation.]' [Citation.]" (*So v. Shin* (2013) 212 Cal.App.4th 652, 671.)

"But '[l]iability for intentional infliction of emotional distress "'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' [Citation.]" [Citations.]' [Citation.]" (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1610.) A claim for unlawful discrimination, even if properly pleaded, does not necessarily establish a claim for a cause of action for intentional infliction of emotional distress. (*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 80; see also *Yurick v. Superior Court* (1989) 209 Cal.App.3d 1116, 1123-1130.)

Here, defendants' assertedly extreme and outrageous conduct consisted of: (1) Walker telling Kaabinejadian that she was not going to investigate the false accusations

19

that other employees were making about him; (2) Walker saying that Kaabinejadian should "'hold up the mirror and look at [him]self'"; and (3) Walker instructing Kaabinejadian, on false pretenses, to make a six-hour, 350-mile trip from Ontario to El Centro, and then terminating him. This falls far short of conduct held insufficient in other cases. (E.g., *Ankeny v. Lockheed Missiles & Space Co.* (1979) 88 Cal.App.3d 531, 534, 536-537 [employer allegedly deprived employee of union stewardship, transferred him from one job to another, passed him over for promotion twice, assigned him to tasks not appropriate to his labor grade, and terminated him].)

Kaabinejadian relies on *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493. There, however, the plaintiff's supervisor "allegedly shouted at plaintiff in a rude, violent and insolent manner as follows: 'You goddam "niggers" are not going to tell me about the rules. I don't want any "niggers" working for me. I am getting rid of all the "niggers"; go pick up and deliver that 8-ton roller to the other job site and get your pay check; you're fired.'" (*Id*. at pp. 496-497.) When the plaintiff reported this to the secretary of the corporation, the secretary "ratified and confirmed" the supervisor's acts. (*Id*. at p. 497.) Walker's statement that Kaabinejadian should "'hold up the mirror and look at [him]self'" does not rise to the level of these blatant racial epithets. Moreover, Kaabinejadian does not allege that there was anything particularly distressing about the manner in which Walker terminated him, except that she made him travel six hours and 350 miles to El Centro. For all his complaints about the summer heat and the remoteness of the location, this is, frankly, just a minor inconvenience.

Kaabinejadian also argues that the trial court erred by sustaining the demurrer while defendants were resisting compliance with his discovery requests. He cites no authority supporting the proposition that the trial court was obliged to await the outcome of discovery before ruling on the demurrer. He does cite *Budget Finance Plan v. Superior Court* (1973) 34 Cal.App.3d 794, but that case merely held that the plaintiff was still entitled to take discovery after a demurrer was sustained *with* leave to amend. (*Id*. at pp. 797-798.) That is not the procedural posture here.

In any event, Kaabinejadian could not possibly have been prejudiced by the unavailability of discovery. With respect to the first, second, and third causes of action, we are reversing the judgment and allowing the action to proceed. With respect to the fourth cause of action, if any of defendants' conduct caused Kaabinejadian extreme and severe emotional distress, presumably he already knew, even without discovery, what that conduct was.

We therefore conclude that the trial court properly sustained the demurrer to the fourth cause of action.

V

DISPOSITION

The judgment is reversed. The order sustaining the demurrer is reversed with respect to the first, second, and third causes of action and affirmed with respect to the fourth cause of action. The matter is remanded for further proceedings not inconsistent with this opinion.

21

Kaabinejadian is awarded costs on appeal against defendants.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

WE CONCUR

RAMIREZ
P. J.

HOLLENHORST
J.